**Arlo E. MASSINGILLE, Appellant,**

v.

**Campbell C. MERIDITH, Appellee.**

Court of Appeals of Kentucky.

Nov. 4, 1966.

John G. Crutchfield, Jones, Ewen & Mac-Kenzie, Louisville, for appellant.

Edward M. Post, Taustine & Post, Louisville, for appellee.

PALMORE, Chief Justice.

This is an automobile accident case in which the only question on appeal is whether the trial court was wrong in directing a verdict for the plaintiff.

The plaintiff, Meridith, was in the process of entering the northbound portion of the North-South Expressway in Louisville by way of a ramp leading upward from Crittenden Drive when his car was struck from the rear by an automobile driven by the defendant, Massingille. The ramp in question enters rather abruptly and at an acute angle onto the main traveled portion of the expressway, there being no merging or "feeder" lane. When Meridith had reached a point at or near the junction of the ramp with the expressway Massingille, who was following, saw him stop and look back over his left shoulder to observe whatever traffic might be coming along the expressway from the south. Massingille stopped about half a car length behind the Meridith car and also looked back down the expressway. He saw one vehicle approaching at a distance he estimated at 300 yards, which he judged to be sufficient clearance to allow both Meridith and himself to proceed onto the expressway. The Meridith car then moved forward, and Massingille followed suit. Massingille's description of the collision follows:

"Well, * * * when I—we were sitting there I turned around in my car and looked out the expressway, I saw this one car on the bridge, and Mr. Meridith turned around also and looked back and he started movin' out, and I started movin' out and I took a quick glance in my mirror to see, for a safety check, and when I looked back to the highway I presumed Mr. Meridith had gone on because there was nothin' to keep him from goin' on, and he—he hit brakes and I—that was it, I couldn't keep from hittin' him. * * * I saw that car when I turned around, * * * and looked out the Expressway, and Mr. Meridith started movin' out so I started movin' out behind Mr. Meridith right here (indicating). So I just for a safety look I thought I'd look, I'd just glance in my mirror to see that I was really safe in goin' and when I looked back Mr. Meridith had hit his brake, his lights was on and I had no chance other than to hit him because I was so close on him that I didn't have time to touch the brakes * * * I saw no reason why Mr. Meridith would con-

sider not going out because it was—the highway was clear, we were both sitting there waiting for a chance to go out."

According to Massingille, Meridith moved forward a distance of 10 feet to three-quarters of a car length before stopping the second time, and it was during this brief interval that he took his eyes off the Meridith car in order to look again for himself through a rear-view mirror mounted on the fender of his automobile.

In Hainline v. Hukill, Ky., 383 S.W.2d 353 (1964), the plaintiff's car was hit by a following automobile when he stopped suddenly on the Clark Memorial Bridge in Louisville to pick up a hitchhiker. His suit against the owner and operator of the second vehicle resulted in a verdict and judgment for the defendants, from which he appealed, claiming he should have had a directed verdict. We held that he was not entitled to a directed verdict and that the trial court's instructions concerning his own duties were not improper. It was the opinion of this court that under the circumstances of such a case the operator of the lead vehicle should keep a lookout not only ahead, but to the rear as well, and should give an appropriate signal of his intention to stop suddenly. As Meridith stopped suddenly without giving any signal other than his brake lights, Massingille relies on the *Hainline* case in support of his contention that a jury could reasonably find Meridith to have been contributorily negligent.

■ We feel that the circumstances of the two cases are not sufficiently comparable for analogy, principally because one is an intersection case and the other was not. KRS 189.380(3) requires the operator of the lead vehicle to signify his intention of stopping "when there is opportunity to give such signal." There are various instances, however, in which the physical situation itself provides sufficient admonition to obviate a signal. For example, if the vehicles are approaching a clearly visible stop sign, a traffic light, a railroad crossing with a train on the track, or some other obvious obstacle, surely a hand signal would be superfluous. In this case there was only a "Yield" sign, but every motorist knows and must therefore anticipate that a high-speed, heavily traveled expressway demands the utmost caution of all who would enter safely upon it from an inferior thoroughfare, particularly when the view is restricted. No one would contend, we believe, that a hand signal by Meridith was necessary to herald his first stop, and it is our further opinion that none was required for the second.

We are not persuaded by the contrary viewpoint expressed by the courts of South Carolina, California, and Tennessee in Daniel v. Hazel, 242 S.C. 443, 131 S.E.2d 260 (1963); Whitford v. Pacific Gas & Electric Co., 136 Cal.App.2d 697, 289 P.2d 278 (1955), and Nichols v. Givens, 49 Tenn.App. 653, 358 S.W.2d 480 (1962). There are, moreover, some factual differences. Evidently in each of those cases there was evidence to support a finding that there was no traffic approaching on the cross-street when the lead vehicle suddenly stopped after moving into the intersection. Nevertheless, even if there had proved to be no traffic coming on the expressway, we do not think it was unreasonable for Meridith to stop twice in order to make a double check.

Considering the few feet he traveled between the two stops, Meridith could not have accelerated to a speed that would have justified Massingille in assuming that he had committed himself to continue without further hesitation. And once Massingille had made that assumption and taken his eyes off the Meridith car, what good would a hand signal have done?

Life is too precious and the incidence of death on the highways too great to justify a policy of law that would permit a jury to say that a motorist cannot, after stopping once at a dangerous intersection, stop again to make certain that he can proceed safely, without being negligent toward the driver and occupants of vehicles to his rear.

Some drivers, of course, are more circumspect than others. The motorist following closely behind another has no basis for assuming the degree of boldness or timidity of the driver ahead. He should be ready for either extreme. At an intersection such as the one in this case the best way to be ready is to stay far enough behind to defend against a sudden stop or decrease in speed. That is precisely what Massingille failed to do, and for that reason we are of the opinion that the trial court properly held him negligent as a matter of law.

The judgment is affirmed.